1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN P. MCDADE,

                    Plaintiff,

        v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

                    Defendant.

CASE NO.    C06-5434KLS

ORDER REMANDING THE
COMMISSIONER'S DECISION
TO DENY BENEFITS

Plaintiff, John P. McDade, has brought this matter for judicial review of the denial of his applications for disability insurance and supplemental security income ("SSI") benefits.  The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13.  After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is forty-nine years old.[1] Tr. 45.  He has a tenth grade education and past work experience as a janitor, carnival worker and caregiver. Tr. 106, 111.

On August 14, 1995, plaintiff protectively filed applications for disability insurance and SSI benefits,

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1  alleging disability as of December 24, 1994, due to mental limitations resulting from a head injury. Tr. 20,

2  32.  His applications were denied initially and on reconsideration. Id.  A hearing was held before an

3  administrative law judge ("ALJ") on April 7, 1997, at which plaintiff, represented by counsel, appeared and

4  testified, as did a vocational expert. Id.  On April 22, 1997, the ALJ issued a decision, finding plaintiff

5  capable of returning to his past relevant work, and therefore not disabled. Id.

6        Plaintiff filed two new applications for disability insurance and SSI benefits on April 15, 2002, again

7  alleging disability as of December 24, 1994, this time due to extremely poor memory, extreme confusion, a

8  brain tumor, and two brain surgeries. Tr. 20, 46, 90, 105.  Both applications were denied initially and on

9  reconsideration. Tr. 20, 45-47, 51.  A hearing was held before the same ALJ on December 30, 2003, at

10  which plaintiff did not appear, but at which his counsel did appear, as did a medical expert who testified. Tr.

11  301-12.  On April 20, 2004, a second hearing was held, at which plaintiff, represented by counsel, appeared

12  and testified, as did a vocational expert. Tr. 313-30.

13        On June 25, 2004, the ALJ issued a decision, once more determining plaintiff to be not disabled,

14  finding specifically in relevant part:

> (1)   at step one of the disability evaluation process,[2] plaintiff had not engaged in
>        substantial gainful activity since his alleged onset date of disability;
>
> (2)   at step two, plaintiff had "severe" impairments consisting of a cognitive disorder,
>        borderline intellectual functioning, a personality disorder, and a depressive
>        disorder;
>
> (3)   at step three, none of plaintiff's impairments met or equaled the criteria of any of
>        those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and
>
> (4)   at step four, plaintiff had the residual functional capacity to engage in simple,
>        repetitive tasks, with only occasional contact with the public and co-workers, but
>        with no exertional limitations, which did not preclude him from performing his
>        past relevant work as a janitor and caregiver.

Tr. 24, 26-27.  Plaintiff's request for review was denied by the Appeals Council on June 6, 2006, making

the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981, § 416.1481.

       On August 2, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision.

(Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of

benefits, for the following reasons:

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.
See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

(a)     the ALJ erred in evaluating the medical evidence in the record;

(b)     the ALJ erred in assessing plaintiff's credibility;

(c)     the ALJ erred in evaluating the lay witness evidence in the record;

(d)     the ALJ erred in assessing plaintiff's residual functional capacity;

(e)     the ALJ erred in finding plaintiff capable of returning to his past relevant work; and

(f)     the evidence in the record establishes plaintiff is unable to maintain competitive employment, and therefore is disabled.

The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision.  <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I.     <u>The ALJ Erred in Evaluating the Medical Evidence in the Record</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

1   "falls within this responsibility." Id. at 603.

2   In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

3   supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a

4   detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

5   thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence."

6   Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the

7   ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

8   The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

9   either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

10   treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

11   legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the

12   ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739

13   F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain

14   why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07

15   (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

16   In general, more weight is given to a treating physician's opinion than to the opinions of those who

17   do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

18   a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or

19   "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,

20   1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242

21   F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the

22   opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may

23   constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-

24   31; Tonapetyan, 242 F.3d at 1149.

25   A.   Dr. DeVidal

26   In mid-September 2003, plaintiff was evaluated by David deVidal, Ph.D., who diagnosed him with

27   an amnestic disorder due to a brain tumor and borderline intellectual functioning. Tr. 235.  He considered

28   plaintiff's progress to be "guarded to poor." Id.  At that time, Dr. de Vidal also completed a form in which

he found plaintiff to have a "marked" limitation (defined as "severely limited but not precluded") in his ability to make judgments on simple work-related decisions, and a moderate limitation (defined as "still able to function satisfactorily" despite the moderate limitation) in his ability to interact appropriately with co-workers, supervisors and the public and to respond appropriately to work pressures in a usual work setting. Tr. 236-37.

In late October 2003, Dr. deVidal filled out another form, in which he found plaintiff to have a "fair" (defined as "seriously limited, but not precluded") ability to function in the following areas: follow work rules, relate to co-workers; deal with the public; use judgment; interact with supervisors; deal with work stressors; maintain attention and concentration; understand, remember and carry out detailed job instructions; relate predictably in social situations; and demonstrate reliability. Tr. 238-40.  He found plaintiff had a "poor to none" (defined as "[n]o useful") ability to function independently and understand, remember and carry out complex job instructions. Id.

The ALJ stated in his decision that he gave Dr. deVidal's evaluation "great weight, as it was a global assessment based upon his review of the other evaluations [of plaintiff that were] completed as well as his own interview and testing results." Tr. 24.  The ALJ further stated that his reliance on Dr. deVidal's opinion was "buttressed by the testimony of the medical expert[ Dr. Sally Clayton] at [the first] hearing who agreed with his conclusions, based upon her review of the entire file." Id.  Plaintiff argues that while the ALJ stated he was giving great weight to Dr. deVidal's evaluation, the ALJ failed to include in his assessment of plaintiff's residual functional capacity all of the mental functional limitations Dr. deVidal found.  The Court agrees.

As noted above, in terms of mental functional limitations, the ALJ found plaintiff had the residual functional capacity "to engage in simple, repetitive tasks with only occasional contact with the public and co-workers." Tr. 26.  Also as noted above, however, Dr. deVidal found plaintiff had a number of mental functional limitations the ALJ did not include in that residual functional capacity assessment.  The ALJ gave no explanation for why he did not adopt these additional limitations, despite the "great weight" he stated he was giving Dr. deVidal's evaluation and opinion.  Most significantly, as discussed below, was Dr. deVidal's finding of poor or no ability to function independently, fair ability to deal with work stressors, and moderate limitation in responding appropriately to work pressures.

1    Defendant argues plaintiff's focus on this finding is misplaced, given that the ALJ found him to be

2    capable only of performing simple, repetitive work, and thus did not find he was capable of performing a job

3    that required him to function independently.  It is far from clear, however, that a limitation to simple,

4    repetitive work means the same thing as an inability to function independently.  That is, merely because a

5    claimant may be limited to such work, does not mean that he or she will not therefore be required to have

6    some ability to function independently on the job.  Indeed, the mental functional limitations form filled out

7    by Dr. deVidal itself distinguishes between the ability to function independently and perform simple tasks, in

8    that it contains a separate section for providing an opinion regarding the claimant's ability to understand,

9    remember and carry out simple job instructions.  See Tr. 239.

10   Defendant further argues that the remainder of that form establishes that while plaintiff had some

11   mental functional limitations, the ability to function was not precluded.  However, the remainder of the form

12   to which defendant refers deals with areas of functioning separate from plaintiff's ability to function

13   independently.  Thus, just because Dr. deVidal found, for example, that plaintiff had only a fair ability to

14   deal with work stressors and maintain attention and concentration, does not at all diminish Dr. deVidal's

15   separate finding that he had no useful ability to function independently.  Accordingly, the Court finds the

16   ALJ erred in evaluating Dr. deVidal's opinion.

17   B.    Dr. Clayton

18   At the first hearing, Dr. Sally Clayton testified that based on her review of the record, plaintiff had

19   an organic mental disorder, borderline intellectual functioning, and a personality disorder. Tr. 304.  She

20   testified that as a result of his mental impairments, plaintiff was moderately impaired in his activities of daily

21   living and social functioning, and markedly impaired in his concentration, persistence and pace.[3] Tr. 307.

22   Plaintiff argues the ALJ failed to mention in his opinion, let alone provide any rationale for rejecting, Dr.

23   Clayton's testimony regarding the marked impairment she found in his concentration, persistence and pace.

24   Again, the Court agrees.

25   Defendant argues the ALJ's determination that plaintiff had "moderate to marked restrictions in

26   maintaining concentration, persistence or pace," showed that the ALJ agreed with Dr. Clayton's testimony

27   on this issue. Tr. 24.  Clearly, though, a finding that plaintiff has only a moderate to marked limitation in

28

---

[3]The terms "moderate" and "marked" were not defined by Dr. Clayton or anyone else present at the hearing.

1   concentration, persistence and pace, is not the same as finding he has a marked limitation in that area.  In

2   addition, this finding by the ALJ was made at step three of the sequential disability evaluation process, the

3   standards for which are different than those used for determining residual functional capacity.  The Court,

4   therefore, finds the ALJ erred here as well.

5       C.    Dr. Agosto

6       In late August 2002, plaintiff was evaluated by Richard M. Agosto, Ph.D., who diagnosed him with

7   a cognitive disorder, a dysthymic disorder and a personality disorder with dependant traits. Tr. 206.  In

8   terms of prognosis, Dr. Agosto opined as follows:

> John McDade has reached a rather chronic state of marginal functioning.  He
> appears to have little motivation to improve his level of adjustment.  He suffers from
> memory difficulties along with emotional complications.  He is frustrated by his
> cognitive limitations, appears to be easily fatigued and is somewhat dissatisfied.  He
> appears to have a certain level of unresolved grief due to the loss of his mother.  It may
> also be that there is grief associated with the loss of his own abilities as well.  The
> prognosis for improvement is poor without significant intervention.  He may improve
> some with counseling and perhaps psychiatric medication.  In addition, significant
> vocational rehabilitation efforts could be made to place this man in a position where he
> can become more productive.

Id.  With respect to plaintiff's functional capabilities, Dr. Agosto concluded:

> John McDade has problems in understanding and memory.  He does perform
> better when he has structured stimulation and ongoing reminders of his tasks and goals.
> However, given a delay of even a short period of time he is likely to become
> disorganized and forget what he recently had learned.  He has very limited ability to
> sustain concentration and persist on tasks.  Socially, he has been rather withdrawn.  He
> does not appear to be someone who avoids contact nor is he openly oppositional or
> resistant to social interaction.  He is fairly limited to adapting to new situations because
> of his memory difficulties and his ongoing low level of dissatisfaction and depression.
> He could likely perform better in work situations that involve repetitive and structured
> tasks.  A sheltered workshop type of position may be an alternative as a stepping-stone
> to more independent work opportunities and adjustment.

Tr. 207.

In early September 2003, Dr. Agosto completed a form, in which he found plaintiff to have a "fair"

ability to: follow work rules; relate to co-workers; deal with the public, use judgment; interact with

supervisors; maintain attention and concentration; and demonstrate reliability. Tr. 243-44.  He also found

plaintiff had a "poor or none" ability to: deal with work stressors, function independently, and understand,

remember and carry out simple job instructions.[4] Tr. 243.

---

[4]As the form completed by Dr. Agosto in early September 2003, is the same one completed by Dr. deVidal in late October 2003, the terms "fair" and "poor to none" also are defined to mean the same.

ORDER
Page - 7

The ALJ discounted Dr. Agosto's August 2002 opinion for the following reasons:

[E]ven though Dr. Agosto administered various memory tests and found the claimant had rather severe memory problems, his conclusions are drawn into question as he failed to administer any validity testing to determine the claimant's veracity. Furthermore, Dr. Agosto noted it was difficult to determine if an individual was malingering, as the memory tests are so dependent on the individual's own performance, noting the claimant was either very clever in altering his pattern of performance or he was actually suffering from deficiencies in memory. The Administrative Law Judge finds the claimant altered his pattern of performance in testing with Dr. Agosto as compared to the testing administered by Dr. [James R.] Adams[, Ph.D., in early June 1998]. The claimant's performance was so poor during the testing administered by Dr. Adams that Dr. Adams was unable to rule out a diagnosis of organicity. The claimant appears to have done better on the testing administered by Dr. Agosto, as he was able to interpret the results.

Tr. 23. Plaintiff argues the ALJ erred in discounting Dr. Agosto's opinion for the above reasons, asserting that the substantial evidence in the record establishes that plaintiff was not malingering. Plaintiff further argues the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Agosto's opinion that he had a poor or no ability to deal with work stress. Once more, the Court agrees.

It is true that Dr. Adams noted problems with plaintiff's performance during his evaluation of him back in early June 1998. For example, Dr. Adams commented that plaintiff seemed "to be searching for symptoms" and that his remarks raised the possibility that he was "manufacturing symptoms." Tr. 184. Dr. Adams further found that plaintiff's persistence during testing was "extremely poor," and that he "put forth little effort" in some testing areas, "raising the question of malingering." Tr. 185. Overall, therefore, he found plaintiff to have been "poorly motivated," resulting in "minimally valid and reliable" testing results, and to be "not a credible informant." Tr. 186-87. As such, Dr. Adams concluded "[t]he most persuasive diagnosis" was malingering. Tr. 187.

On the issue of malingering, Dr. Agosto opined as follows:

In reports of previous examinations, there has been [sic] question as to whether this man is exaggerating his memory difficulties. Of course, it is quite difficult to assess an individual's memory functioning because it is so dependent upon a person's own performance and report unless one has opportunities to receive collaborating information from others who have observed him on a daily basis. Nonetheless, Mr. McDade's patterns on the WMS-III seem to be consistent with someone who was functioning in a consistent manner and was not exaggerating to the point where he feigned any ability to remember at all. For example, his Recognition scores were higher than his Recall scores, which is typical for nearly all individuals. In addition, his attention skills were higher than skills requiring either brief or prolonged delay, which is again a valid pattern. His Immediate Memory scores were close to, and sometimes higher than his Delayed Memory scores, which is again a normal pattern. It would seem, therefore, that Mr. McDade is either very clever in altering his pattern of performance or actually is suffering from deficiencies in memory.

Tr. 206.  Thus, while Dr. Agosto himself may not have administered any validity testing, and may have noted problems determining whether a claimant is malingering, he did state that based on his review of the test results, plaintiff was functioning in a consistent manner and not malingering.  In addition, Dr. Agosto's final comments regarding plaintiff's test performance clearly are designed to point out the consistency he saw, by stating that one would have to be either extremely clever, unlikely, or, indeed, as appears to be the case here, suffer from actual memory deficiencies, in order to produce the scores plaintiff did.

In general, where the opinion of an examining medical source is based on independent clinical findings, it is within the ALJ's discretion to disregard the conflicting opinion in another examining medical source's diagnosis.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  Here, however, it appears that of the many medical sources in the record who evaluated plaintiff, Dr. Adams was the only such source to have found plaintiff to be malingering.  As pointed out by plaintiff, furthermore, Dr. Agosto's opinion on the issue of malingering is far more consistent with the opinions of those other medical sources, and thus with the substantial evidence in the record, than that of Dr. Adams.

For example, in early May 1985, and late November 1995, plaintiff underwent two mental health evaluations in which no issues of malingering or motivational problems were noted. Tr. 168-76.  Rather, he was found to have legitimate and significant mental functional impairments. Id.  Indeed, in late November 1995, plaintiff "appeared to be motivated" both on testing and during the interview. Tr. 168.  In early July 2001, it was noted that testing yielded a "valid and reliable profile." Tr. 195.  Another evaluation done in late December 2001, again failed to indicate the presence of malingering. Tr. 196-99.  In mid-September 2003, furthermore, Dr. deVidal, on whose opinion, as noted above, the ALJ placed great weight, concluded as follows regarding the question of malingering and plaintiff's motivation:

> The question of malingering, validity of scores, and motivation level is somewhat more complex.  Past evaluators have come down on both sides of the question. . . . [Some] of his . . . [testing] scores . . . were below the cutoff, suggesting questionable validity.  On the other hand, there has been a fair degree of consistency in his cognitive test scores over a span of eight years, which would be difficult to intentionally fake on and does provide a certain degree of validity to his claims.  Moreover, if he were malingering, one would expect a significantly poorer score on . . . one of the easier tests to do poorly at, and in fact he got fairly decent scores.  My best professional guess on this is that, although his motivation level on some level may have negatively influenced his scores, there is still fairly good evidence for a memory deficiency.
> . . . As noted above, the validity profiles suggested a less than fully reliable result on the clinical scales.  Since it appears that he was not responding randomly, my best hypothesis is that he did not fully understand the questions and consequently produced a profile that looks much "sicker" than he really is.

1  Tr. 234-35.

2      Another in-depth psychological evaluation performed in early November 2003, found no problems

3  with motivation or cooperation indicative of malingering as well. Tr. 246-50.  Finally, Dr. Clayton, again on

4  whose testimony the ALJ relied to buttress the great weight he gave to Dr. deVidal's opinion, testified that

5  she concurred with Dr. deVidal's opinion on this issue and that it was "unlikely" plaintiff had been

6  "intentionally malingering." Tr. 24, 305.  More specifically, Dr. Clayton testified that on the whole there

7  was "relative consistency" that to her mind ruled out any "intentional effort to change the [psychological

8  testing] scores." Tr. 306.

9      Defendant argues Dr. Agosto's opinion was essentially the same as that of Dr. deVidal, which she

10  asserts, the ALJ properly evaluated.  As discussed above, however, the ALJ did not properly evaluate Dr.

11  deVidal's opinion.  While defendant further argues the ALJ's residual functional capacity assessment and his

12  step four findings accommodate some of the other limitations found by Dr. Agosto, this was not the

13  rationale provided by the ALJ, nor does the Court find it to be persuasive.  For example, that assessment

14  still does not account for some of plaintiff's most significant limitations Dr. Agosto noted in his opinion,

15  e.g., his "very limited ability to sustain concentration and persist on tasks." Tr. 207.  The ALJ also made no

16  mention of the limitations noted by Dr. Agosto on the form he completed in early September 2003.  Thus,

17  in addition to his improper rejection of Dr. deVidal's August 2002 opinion, the Court finds the ALJ further

18  erred in failing to provide any valid reasons for not adopting Dr. Agosto's finding of poor or no ability to

19  deal with work stress contained in the early September 2003 form as well.

20      D.    Dr. Schneider

21      Plaintiff was evaluated in early November 2003, by Robert E. Schneider, Ph.D., who provided the

22  following impressions regarding his conditions:

23      1.    This individual is far more impaired than his initial presentation suggests.  He is a
             friendly and personable individual who has a reasonably good vocabulary and
24            seems to be able to follow a conversation until he is required to produce specific
             information or chronologies.  As noted, it was necessary to provide extremely
25            specific instructions, regardless of how simple the task.  He seemed to be
             incapable of making any inference.  He was slow when performing almost all
26            activities and required a considerable amount of effort to focus on even simple
             tasks.  He thinks that he might be able to perform jobs stacking wood as he did
27            at Applied Industries, but this evaluation suggests he would be very slow
             performing any task, would fatigue easily and would require the level of
28            supervision that he required at Applied Industries or at another sheltered work
             environment.  This evaluation concludes the [sic] this individual is functionally

1          disabled.

2              2.      His disability appears to be related to the brain tumor. . . .

3    Tr. 249-50.  Dr. Schneider considered plaintiff's prognosis to be poor, and concluded his evaluation report

4    as follows:

5          The individual has difficulty understanding and following simple instructions and
           extreme difficulty understanding and following complex and detailed instructions.  He
6          seems to be incapable of maintaining a competitive pace of productivity or performance.
           It is unlikely that he could learn detailed job skills, but might be able to learn very simple
7          routines.  He is personable and it is likely that he is capable of getting along with co-
           workers and supervisors, but it is unlikely that he could tolerate the demands of
8          interacting with the public.

9    Tr. 250.

10         In mid-April 2004, Dr. Schneider completed a form in which he found plaintiff to have a "marked"

11   limitation (defined as "seriously limited, but not precluded") in his ability to: deal with the public, use

12   judgment, function independently, maintain attention and concentration, and demonstrate reliability.  Tr.

13   286-88.  He found plaintiff to have a marked to extreme limitation (defined as "[n]o useful ability to

14   function") in his ability to understand, remember and carry out complex job instructions, and extremely

15   limited in his ability to deal with work stress and understand, remember and carry out detailed instructions.

16   Tr. 286-87.  In addition, Dr. Schneider found him to have a moderate (defined as "limited but satisfactory")

17   limitation in a number of other mental functional areas.  Tr. 286-88.

18         With respect to Dr. Schneider's opinions, the ALJ found as follows:

19         The Administrative Law Judge has considered Dr. Schneider's opinions and has
           accorded only some weight as he relied primarily on the claimant's subjective
20         complaints.  He administered only the Beck Depression Inventory and Trails A and B.
           Both of these tests rely upon the claimant's self-report.  Additionally, Dr. Schneider
21         failed to review any of the other medical evidence and his report is simply a reiteration
           of the claimant's subjective complaints with possible limitations.  The Administrative
22         Law Judge does note Dr. Schneider did administer the Trails A & B and noted the
           claimant required forty-one seconds to complete Trails A and one hundred seconds to
23         complete Trails B and that he had to repeat, review and re-explain the instructions
           innumerable times.  These scores are very similar to those obtained by the other
24         physicians who did not have to repeat, review and re-explain the instructions
           innumerable time. (Exhibit B15F/18F).  Additionally, Dr. Schneider's opinion is based
25         solely on one visit with the claimant.

26   Tr. 23.  Plaintiff argues the ALJ erred in giving only "some weight" to Dr. Schneider's opinion, asserting

27   that his opinion that plaintiff has a severe memory impairment is consistent with the substantial medical

28   opinion evidence in the record, and his opinion regarding the inability to sustain competitive employment is

1  consistent with those of both Dr. deVidal and Dr. Agosto.

2      The Court agrees the ALJ erred in evaluating the opinion of Dr. Schneider.  First, the fact that Dr.

3  Schneider may have relied primarily on plaintiff's subjective complaints is a questionable basis in this case

4  for discounting his opinion.  It is true that a medical source's opinion premised on a claimant's subjective

5  complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility.

6  See Tonapetyan, 242 F.3d at 1149.  As explained below, however, the ALJ erred in assessing plaintiff's

7  credibility.  In addition, it has been noted that "[a] patient's report of complaints, or history, is an essential

8  diagnostic tool," and that "[a]ny medical diagnosis must necessarily rely upon the patient's history and

9  subjective complaints." Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997) (citation omitted).  This would

10 seem particularly to be the case in the context of mental health evaluations.

11     While it may be true that Dr. Schneider did not review the other medical reports contained in the

12 record in providing his report, there is no requirement that an examining medical source necessarily must do

13 so.  Furthermore, the Court does not find Dr. Schneider's report is "simply a reiteration" of plaintiff's

14 subjective complaints with possible limitations.  Rather, in addition to obtaining plaintiff's history, Dr.

15 Schneider performed a full mental status examination, and, as admitted by the ALJ, at least some formal

16 psychological testing. See Tr. 246-49.  Indeed, performance of a mental status examination on its own has

17 been found to be a proper basis on which to base a medical diagnosis. See Clester v. Apfel, 70 F.Supp.2d

18 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic

19 impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the

20 diagnosis of a physical illness or injury.").

21     Similarly, the mere fact that Dr. Schneider may have performed only one evaluation of plaintiff does

22 not in itself diminish the validity of his opinion and findings.  As explained above, the limitations with which

23 Dr. Schneider assessed plaintiff were based on plaintiff's reported history, a mental status examination and

24 at least some psychological testing.  In addition, Dr. Schneider provided a consultative evaluation.  Most

25 such evaluations in those Social Security cases that have come before this Court in general are made on the

26 basis of only one visit.  This case is a prime example.  The great majority of the examining medical source

27 opinion evidence in the record, including that of Dr. Adams on which the ALJ appears to have placed the

28 most weight, is based on only one visit with plaintiff.

1    Finally, with the exception of that of Dr. Adams, again the majority of the other examining medical

2    source opinions in the record show an absence of malingering and the presence of significant, long-term

3    memory and other psychological impairments. See Tr. 174, 176, 193, 195, 198, 206-07, 237, 239-40, 243-

4    44. Further, many of the specific mental functional limitations found by Dr. deVidal, Dr. Agosto and Dr.

5    Schneider are fairly similar in terms of their severity. See Tr. 239-40, 243-44, 287-88. As such, as he did

6    with respect to his evaluation of the opinions of Drs. deVidal and Agosto, the ALJ failed to provide proper

7    reasons for discounting the opinion of Dr. Schneider as well.

8        The record also contains the report and opinion from a second evaluation of plaintiff Dr. Schneider

9    performed in late May 2004. Tr. 292-98. Dr. Schneider described plaintiff as being "very cooperative," and

10   stated that he did "not seem to exaggerate impairment." Tr. 293. Plaintiff "scored within the severely

11   impaired range on tests of both immediate and delayed recall," as well as "within the range that indicates

12   credible effort" on testing to rule out misrepresentation. Tr. 294. As such, Dr. Schneider saw plaintiff as

13   "providing reliable information and a reliable effort on testing." Id. Again, Dr. Schneider felt plaintiff's

14   prognosis was poor, and concluded his report as follows:

15       Impressions are unchanged since the previous evaluation. John is more impaired than he
         presents. As noted previously, he is a friendly and personable individual who presents
16       fairly well and follows a conversation, but testing is precisely consistent with self-report
         and indicates that midterm and delayed memory are extremely impaired. As noted
17       previously, he will require very simple and specific instructions and simple tasks similar
         to those he performed at Applied Industries. As noted previously, he requires another
18       sheltered work environment. There is no evidence to contradict the previous conclusion
         that this individual is functionally disabled secondary to the impact of the brain tumor. . .
19       .

20       John has difficulty understanding and following simple and detailed instructions,
         difficulty performing any activities at a competitive pace and difficulty performing tasks
21       that require concentration. It is unlikely that he can sustain a full day of employment
         activities due to fatigue that is typical of impaired brain function. As noted previous,
22       [sic] he is personable individual who is able to get along with others.

23   Id. Dr. Schneider further found plaintiff to have permanent moderate, marked and sever

24    limitations in a number of specific mental functional areas. Tr. 297-98.

25       Dr. Schneider's second evaluation report was not provided to the ALJ, but was submitted for the

26   first time to the Appeals Council. Before getting to the merits of this second evaluation report, the Court

27   first must address whether it has the authority to review additional evidence provided for the first time to

28   and considered by the Appeals Council. Plaintiff asserts the Court should consider this evidence, because

1    under Ramirez v. Shalala, 8 F.3d 1449, 1454 (9th Cir. 1993), new evidence submitted for the first time to

2    the Appeals Council becomes part of the record for judicial review.

3        Defendant concedes that under Ramirez, the reviewing court may consider new evidence submitted

4    to the Appeals Council in determining whether the ALJ's decision is supported by substantial evidence.[5] 8

5    F.3d at1451-52; see also Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing to Ramirez to find

6    that additional materials submitted to Appeals Council properly may be considered, because the Appeals

7    Council addressed them in context of denying claimant's request for review); Gomez v. Chater, 74 F.3d

8    967, 971 (9th Cir. 1996) (again citing to Ramirez in holding that evidence submitted to Appeals Council is

9    part of record on review to federal court).

10       Defendant argues, however, that this Court has no jurisdiction to review the Appeals Council's

11   denial of plaintiff's request for review. See Mathews v. Apfel, 239 F.3d 589, 594 (3rd Cir. 2001) (noting that

12   no statutory authority, source of district court's review authority, authorizes district court to review

13   Appeals Council decisions to deny review).  Because no federal court jurisdiction exists, defendant asserts

14   this Court's review of new evidence submitted to the Appeals Council is governed by the requirements of

15   sentence six of 42 U.S.C. § 405(g). Sentence six provides in relevant part that the Court "may at any time

16   order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing

17   that there is new evidence which is material and that there is good cause for the failure to incorporate such

18   evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

19       Defendant also cites to Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001), to argue that before

20   this Court may remand this case for further consideration, plaintiff first must show the additional evidence

21   he submitted for the first time to the Appeals Council is "new" and "material" and he had "good cause" for

22   not submitting it earlier.  It is not clear, however, that the holding in Mayes is applicable here.  While the

---

24       [5]In Ramirez, the Ninth Circuit found specifically as follows:

25   Although the ALJ's decision became the Secretary's final ruling when the Appeals Council declined to
     review it, the government does not contend that the Appeals Council should not have considered the
26   additional report submitted after the hearing, or that we should not consider it on appeal.  Moreover,
     although the Appeals Council "declined to review" the decision of the ALJ, it reached this ruling after
27   considering the case on its merits; examining the entire record, including the additional material; and
     concluding that the ALJ's decision was proper and that the additional material failed to "provide a basis
28   for changing the hearing decision."  For these reasons, we consider on appeal both the ALJ's decision and
     the additional material submitted to the Appeals Council.

Id.

Ninth Circuit in <u>Mayes</u> did apply the standards set forth in sentence six of 42 U.S.C. § 405(g) in affirming the district court's refusal to remand that case for consideration of new evidence submitted to the Appeals Council, it did not overrule its prior holding in <u>Ramirez</u>. Thus, while remand to the ALJ for consideration of such new evidence may require a showing of newness, materiality and good cause, the Court still may consider that evidence in determining whether the substantial evidence standard was met.

The distinction between <u>Ramirez</u> and <u>Mayes</u>, therefore, appears to depend on whether the claimant is seeking to have the new evidence considered in determining whether the ALJ's decision was supported by substantial evidence, or whether he or she merely is requesting remand for further consideration of his or her claim to the ALJ in light of that new evidence. Indeed, all of the claimants in <u>Ramirez</u>, <u>Harman</u> and <u>Gomez</u>, sought judicial review of the propriety of the ALJ's disability determination based on the evidence that both was before the ALJ and later submitted to the Appeals Council. In <u>Mayes</u>, however, the claimant specifically had sought remand to the ALJ for consideration of the newly submitted evidence.[6]

In this case, plaintiff, like the claimants in <u>Ramirez</u>, <u>Harmon</u> and <u>Gomez</u>, has requested reversal of the ALJ's decision for an outright award of benefits based on both the record that was before the ALJ and the additional evidence he submitted to the Appeals Council, but has not sought remand for consideration of that additional evidence by the ALJ. Thus, it would seem, <u>Ramirez</u>, and not <u>Mayes</u>, would apply here. Nevertheless, the Court need not determine which standard ultimately governs in this case, because, as discussed above, the ALJ erred in discounting Dr. Schneider's first evaluation report. For that reason, and the other reasons stated elsewhere herein, and not because of Dr. Schneider's second evaluation report, this matter shall be remanded to the Commissioner for further administrative proceedings.[7]

---

[6]It is true that at least one other circuit court has rejected this distinction, and applied solely the standard required by 42 U.S.C. § 405(g). <u>See</u> <u>Matthews</u>, 239 F.3d at 594 ("We have previously held that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence. . . . No statutory provision authorizes the district court to make a decision on the substantial evidence standard based on the new and material evidence never presented to the ALJ. Instead, the [Social Security] Act gives the district court authority to remand the case to the Commissioner, but only if the claimant has shown good cause why such new and material evidence was not present to the ALJ."). As noted above, however, <u>Mayes</u> does not specifically repudiate <u>Ramirez</u>, and thus both appear to remain good law in this circuit.

[7]Even if the Court were to take into consideration Dr. Schneider's second report in determining whether the ALJ's decision is supported by substantial evidence pursuant to the Ninth Circuit's holding in <u>Ramirez</u>, it is not clear that evidence would be any more helpful to plaintiff. For example, it is true that Dr. Schneider in his second evaluation administered psychological testing that in his opinion ruled out malingering, stated that his impressions of plaintiff were "unchanged since the previous evaluation," and again found him to be "functionally disabled." Tr. 294. On the other hand, Dr. Schneider also completed a form at the same time in which he found plaintiff to have only a moderate limitation in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 297. This latter finding is in contrast

II.      The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering.  O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms.  Id.

The ALJ discounted plaintiff's credibility for the following reasons:

> The Administrative Law Judge has considered the claimant's testimony and has found it to be partially credible to the extent he does have medically determinable impairments which do cause vocationally relevant limitations, but not to the extent he is completely disabled by them.  While objective testing has revealed the claimant does have memory deficits as well as social adaptation difficulties, the objective testing has also revealed the claimant has a tendency to exaggerate his limitations and puts forth poor effort.  As Dr. Clayton, the medical expert at [the second] hearing testified, while the claimant's alcohol use has diminished since his last hearing in 1997, his personality

to the finding he made less than two months earlier in which plaintiff was noted to have an extreme limitation (i.e., no useful ability to function) in his ability to deal with work stressors.  Tr. 287.  As discussed below, similar discrepancies regarding plaintiff's ability to tolerate work stress existing elsewhere in the medical source opinion evidence in the record, prevents a finding of disability at step five of the disability evaluation process based on the vocational expert's testimony.

issues have become more prominent.

        The claimant takes no medication for his alleged depression and shoulder pain and has not sought any meaningful treatment for his impairments nor has he sought any type of vocational rehabilitation. Numerous examining physicians have noted the claimant's lack of motivation and his poor effort on testing. Some physicians have opined this is due to his memory deficits and others have opined this is due to malingering. The Administrative Law Judge finds the latter to be more consistent with the evidence of records given the invalid MMPI and TOMM tests. At the very least, it appears that Mr. McDade puts forth little effort and tends to exaggerate his deficits. Further, while testing performed in 1998 revealed some memory deficits the deficits were not at the level most recently tested. Furthermore, the claimant's testimony is inconsistent with the fact he was able to attend school and complete classes necessary for him to be paid as a caregiver for his mother. The claimant has worked fairly successfully at labor-oriented occupations despite his alleged memory problems. Objective testing has also revealed the claimant is capable of simple work. The claimant's testimony is inconsistent with the credible examining physicians and those of the State agency physicians.

Tr. 25-26.

        Plaintiff first argues the ALJ erred in discounting his credibility by not identifying what specific testimony he found to be not credible and what specific evidence showed it to be not credible. While it is true that the ALJ did not specifically state which portions of plaintiff's express testimony he found to be not credible, as certainly can be seen above he did point out the particular claims and symptoms plaintiff was alleging to be of a disabling nature. In addition, the ALJ provided specific examples taken from the objective medical and other evidence in the record as support for his findings.

        Plaintiff next takes issue with the ALJ discounting his credibility in part on his lack of motivation and poor testing efforts. Defendant argues this reason for discounting plaintiff's credibility was proper, because the record contained evidence of malingering. In particular, defendant points to the opinion of Dr. Adams, who diagnosed plaintiff with malingering. As discussed above, however, the substantial evidence in the record shows that plaintiff was not malingering, with Dr. Adams being the only medical source who provided that diagnosis. Most of the other medical sources who evaluated plaintiff, found his performance with respect to his mental status examinations and psychological testing to be largely consistent and for the most part due to his memory problems, personality issues or other cognitive impairments.

        Plaintiff further argues the ALJ erred in finding plaintiff's testimony regarding his symptoms and limitations to be inconsistent with the credible medical source opinion evidence in the record. The ALJ does not specify which medical source opinions are inconsistent with plaintiff's testimony. Clearly, the opinion of Dr. Adams is not consistent with plaintiff's allegations. In addition, as discussed above, not all of

1   the examining medical sources in the record were in agreement as to the severity of all of plaintiff's mental

2   functional limitations, and two non-examining consulting medical sources found such limitations to be only

3   mildly to moderately severe.  See Tr. 208-09, 218-22.  Nevertheless, the ALJ's lack of specificity fails to

4   provide the Court with any basis for evaluating the propriety of his finding here.

5         With respect to the ALJ's other stated reasons for discounting plaintiff's credibility, although not

6   specifically raised by plaintiff, the Court finds them to be questionable as well.  For example, it is true that

7   the record indicates that plaintiff takes no medication for his depression and shoulder pain, and that he has

8   not actively sought vocational rehabilitation.  Evidence in the record also shows, however, that given the

9   longstanding nature of his mental impairments, the efficacy of treatment is uncertain and his prognosis is

10   guarded to poor.  See Tr. 174, 176, 188, 195, 199, 206, 235, 250.  In addition, plaintiff has not alleged

11   disability based on shoulder pain, so it is difficult to see the relevance of the ALJ's reliance on the lack of

12   medication therefor.  Lastly, while plaintiff may not have actively sought vocational rehabilitation, this

13   factor alone does not necessarily indicate a lack of credibility, particularly if there is little evidence in the

14   record that such rehabilitation would prove successful.

15         The remaining reason provided by the ALJ for discounting plaintiff's credibility, that his testimony is

16   inconsistent with the fact he was able to attend school and complete classes necessary for him to be paid as

17   a caregiver for his mother and that he was able to work fairly successfully at labor-oriented occupations,

18   certainly does have some support in the record.  See Tr. 169-70, 181-82, 222, 232, 246-47, 250.  However,

19   it is not clear this reason alone would be sufficient to uphold the ALJ's credibility determination, in light of

20   the errors he made in that determination noted above.  See Tonapetyan, 242 F.3d at 1148.  For this reason,

21   as well as the others set forth herein, remand for further administrative proceedings is proper.

22   III.     The ALJ Failed to Properly Assess the Lay Witness Statement in the Record

23         Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into

24   account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to

25   each witness for doing so."  Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001).  An ALJ may discount lay

26   testimony if it conflicts with the medical evidence.  Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.

27   1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In rejecting

28   lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for

dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

With respect to the lay witness evidence in the record, the ALJ found as follows:

> The Administrative Law Judge has considered the 3rd party witness statements contained in Section E of the record and have found such to be generally credible to the extent these individuals are simply reporting their observations of the behaviors the claimant demonstrates. They are not knowledgeable in the medical and/or vocational fields and thus are not able to render opinions on the claimant [sic] ability to engage in basic work activities.

Tr. 26. Plaintiff argues these findings do not constitute "germane" reasons for discounting the credibility of the lay witnesses in the record. The Court agrees.

While it may be true, as both the ALJ and defendant assert, that lay witnesses are not qualified to give opinions on the ultimate issue of disability, the Commissioner's own regulations require consideration of "observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing 20 C.F.R. § 404.1513(e)(2)). In addition, "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Id. The ALJ provided no reasons, germane or otherwise, for discounting the observations of the lay witnesses in this case, and, indeed, he found them to be generally credible. However, the ALJ failed to state how he factored those lay witness observations into his assessment of plaintiff's ability to work.

Defendant argues there was no error here, because the ALJ's finding that plaintiff was limited to simple, repetitive tasks was consistent with the observations of plaintiff's friend, David M. Miller. Mr. Miller wrote that plaintiff experiences extreme memory lapses and confusion, has a serious difficulty or inability to perform even simple tasks, never gets odd jobs he is given done correctly, is not competent even with respect to small tasks, and is totally unreliable. Tr. 140, 142. These observations hardly show that plaintiff is capable of simple, repetitive work, particularly in light of the observation that he is unable to perform even simple tasks. Thus, even if the ALJ intended to adopt the observations of Mr. Miller by limiting plaintiff to simple, repetitive tasks, such adoption appears to be inconsistent with a limitation to simple, repetitive work.

IV.    The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ assessed plaintiff with the residual functional capacity to "engage in simple, repetitive tasks with only occasional contact with the public and co-workers," with no exertional limitations. Tr. 26. Plaintiff argues the ALJ erred by failing to include therein the other mental functional limitations found by Drs. deVidal, Clayton, Agosto, and Schneider. The Court agrees that in light of the ALJ's improper evaluation of the opinions of those medical sources, it cannot be said that his assessment of plaintiff's residual functional capacity is without error. As discussed above, the ALJ erred in failing to provide specific and legitimate reasons for not adopting all of the mental functional limitations found by these medical sources. Those limitations, if properly adopted, clearly show plaintiff to be far more limited than the ALJ's assessment of his residual functional capacity indicates.

Dr. deVidal, for example, found plaintiff to be markedly limited in his ability to make judgments on simple work-related decisions, to be seriously limited in his ability to follow work rules, use judgment, interact with supervisors, deal with work stressors, maintain attention and concentration, relate predictably in social situations, and demonstrate reliability, and to have poor or no ability to function independently. Dr. Agosto made substantially similar findings, although he did not find plaintiff's limitations in the areas of dealing with work stressors, relating predictably in social situations, and demonstrating reliability rose to the

1    level of marked impairment.

2         Dr. Clayton testified that plaintiff was markedly impaired with regard to concentration, persistence

3    and pace, although it is not clear her definition of marked was the same as that used by Dr. deVidal and Dr.

4    Agosto.  Dr. Schneider found plaintiff to be extremely limited in his ability to interact with supervisors and

5    deal with work stressors, which also differed from the findings of Drs. deVidal and Agosto.  Dr. Schneider

6    found plaintiff to be markedly impaired in his ability to function independently (which appears to differ from

7    the findings made by both Dr. deVidal and Dr. Agosto), maintain attention and concentration, and

8    demonstrate reliability (which again differs with the finding provided by Dr. Agosto), as well.  In addition,

9    Dr. Schneider opined that plaintiff was functionally disabled, a finding that no other medical source in the

10   record has made.

11        Accordingly, while plaintiff argues all of the limitations the above medical sources found should

12   have been included in the ALJ's assessment of his residual functional capacity, as noted above, differences

13   exist among those findings, and the findings of the other medical sources in the record.  This is another

14   reason why remand of this matter for further administrative proceedings is required to further evaluate the

15   medical evidence in the record and re-determine plaintiff's work-related limitations.

16   V.    The ALJ's Determination Regarding Plaintiff's Past Relevant Work

17        Plaintiff has the burden at step four of the disability evaluation process to show that he is unable to

18   return to his past relevant work.  Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  Plaintiff argues

19   that because the ALJ limited him to simple, repetitive work, and because jobs he did in the past, as those

20   jobs are described in the Dictionary of Occupational Titles ("DOT"), require levels of reasoning greater than

21   that, he is precluded from being able to return to those jobs.  Defendant argues that with respect to at least

22   one of those jobs, the DOT's required level of reasoning is not inconsistent with the ALJ's limitation to

23   simple, repetitive work.

24        The vocational expert identified two jobs plaintiff did in the past to which the ALJ found he could

25   return, caregiver, DOT 309.677-010 (companion), and janitor, DOT 381.687-018 (industrial cleaner).  Tr.

26   328-29.  According to the DOT, the job of companion requires Level 3 reasoning, while that of industrial

27   cleaner requires Level 2 reasoning.  The DOT defines Level 1 through 3 reasoning as follows:

28        LEVEL 3

Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

LEVEL 2

Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

LEVEL 1

Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, Appendix C.

Plaintiff argues that the ALJ's limitation to simple, repetitive tasks restricts him to those jobs that require only Level 1 reasoning.   The definition of Level 1 reasoning does expressly refer to "simple one- or two-step instructions," whereas the definition of Level 2 reasoning clearly deals with more "detailed" instructions involving a few to several "concrete variables," and that of Level 3 reasoning talks in terms of dealing with "several concrete variables." Id.  Thus, while the DOT does not explicitly state that Level 1 reasoning is simple, repetitive work, it would appear that Level 1 reasoning is more analogous to the ability to perform simple, repetitive work tasks than is Level 2 or 3 reasoning.

Defendant points out that other courts have found Level 2 reasoning to be consistent with the ability to do simple, routine and repetitive work tasks. See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding Level 2 reasoning to be more consistent with limitation to simple, routine work tasks); Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D. Cal. 2005) (making distinction between DOT's and Social Security regulations' use of terms "simple" and "detailed", and finding limitation to simple and repetitive tasks to be closer to Level 2 reasoning); Flaherty v. Halter, 182 F.Supp.2d 824, 850-51 (D. Minn. 2001) (finding that Level 2 reasoning did not conflict with limitation to work involving simple, routine, repetitive, concrete, and tangible tasks).

None of those courts' explanations for why simple, routine and repetitive work is more analogous to Level 2 reasoning than it is to Level 1 reasons are particularly persuasive.  For example, the Hackett court merely stated that such worked appeared to be more consistent with Level 2 reasoning. 395 F.3d at 1176. The Meissl and Flaherty courts did provide somewhat more explanations.  Those courts, however, appear

1    to focus largely on the fact that in describing Level 2 reasoning, the DOT qualified the requirement that one

2    must be able to understand detailed instructions by also stating the instructions be "uninvolved." Meissl, 403

3    F.Supp.2d at 984; Flaherty, 182 F.Supp.2d at 850-51.

4        It is equally reasonable, however, to view a limitation to simple, repetitive work on its face as more

5    consistent with the restriction to simple one to two step instructions described by the DOT's definition of

6    Level 1 reasoning.  While in general where the evidence admits of more than one rational interpretation, the

7    Court must uphold the Commissioner's decision, here, there is no indication that the ALJ considered this

8    issue in finding plaintiff capable of returning to work that required more than Level 1 reasoning. See Allen,

9    749 F.2d at 579; Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999) (ALJ has affirmative duty to ask

10   vocational expert about possible conflicts with DOT).

11       In any event, there appears to be no disagreement here that a limitation to simple, repetitive work is

12   not consistent with Level 3 reasoning. See Hackett, 395 F.3d at 1176 (finding limitation to simple and

13   routine work to be inconsistent with demands of Level 3 reasoning) (citing to Lucy v. Chater, 113 F.3d

14   905, 909 (8th Cir. 1997) (rejecting contention that claimant limited to following only simple instructions can

15   engage in full range of sedentary work because many unskilled jobs in that category require reasoning levels

16   of 2 or higher)).  Thus, at the very least, it appears the ALJ erred in finding plaintiff capable of being able to

17   return to his past job as a caregiver.  On remand, the Commissioner shall re-determine whether or not

18   plaintiff is capable of returning to his prior job as a janitor.

19   VI.    Plaintiff Has Failed to Establish the Evidence in the Record Shows Him to Be Unable to Maintain
            Competitive Employment

20

21       If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

22   process the ALJ must show there are a significant number of jobs in the national economy the claimant is

23   able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), §

24   416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the

25   Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock

26   v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

27       An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

28   posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

     1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

1   medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

2   Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

3   the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that

4   description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

5   2001).

6          Here, the ALJ posed a hypothetical question to the vocational expert that included essentially the

7   same limitations contained in his assessment of plaintiff's residual functional capacity. Tr. 328.  Because, as

8   discussed above, the ALJ erred in assessing plaintiff's residual functional capacity, it cannot be said that the

9   hypothetical question accurately describes all of plaintiff's limitations.  Plaintiff argues, however, that the

10  limitations set forth in the opinions provided by Drs. deVidal, Clayton, Agosto and Schneider, which, as

11  discussed above, the ALJ improperly rejected, establish he cannot maintain competitive employment.  The

12  Court disagrees.

13         Plaintiff asserts that Dr. deVidal's finding that he had a poor or no ability to function independently

14  precludes competitive employment. See Tr. 239.  As noted above, Dr. Agosto made the same finding. Tr.

15  243.  There is no vocational expert testimony in the record, however, to show that a poor or no ability to

16  function in this area precludes all employment.  Plaintiff also asserts that Dr. Clayton's testimony that he is

17  markedly impaired with respect to concentration, persistence and pace warrants a finding of disability as

18  well.  Again, though, there is no vocational expert testimony showing that a marked limitation in this area is

19  synonymous with an inability to work at all.  Indeed, as discussed above, it is not clear what Dr. Clayton

20  even meant by making a finding of marked impairment.

21         Plaintiff next argues that given Dr. Agosto's opinion that plaintiff had a poor or no ability to deal

22  with work stressors, and that the vocational expert – in response to the ALJ's second hypothetical question,

23  in which he added the limitation of a severe inability to tolerate work stress – testified that a person with

24  such a limitation would be unable to sustain employment, mandates a finding of disability. Tr. 328.  Once

25  more, the Court disagrees.  As discussed above, the medical sources in the record do not agree regarding

26  the level of impairment plaintiff has in this functional area.  Thus, for example, Dr. deVidal found him to be

27  seriously limited, but not precluded with regard to dealing with work stressors. Tr. 237.

28         Indeed, at least half of the medical sources in the record, even excluding the most recent finding by

Dr. Schneider that plaintiff was moderately limited in his ability to respond appropriately to and tolerate the

1   pressures and expectations of a normal work setting, found plaintiff to be not as seriously limited in his

2   ability to handle work stressors. See Tr. 190, 193, 198, 218, 220-21, 237, 239, 243, 287, 297.  As such, it is

3   not at all clear the substantial evidence in the record supports the vocational expert's testimony in response

4   to the second, more restrictive, hypothetical question the ALJ posed.

5          Finally, plaintiff argues he should be found disabled based on Dr. Schneider's opinion regarding his

6   difficulty in dealing with work stressors and inability to sustain employment.  First, as just discussed, the

7   evidence regarding the severity of plaintiff's limitation in the area of handling work stressors is mixed at

8   best.  Second, it is true that Dr. Schneider stated that in his opinion plaintiff was functionally disabled. Tr.

9   250.  However, also as discussed above, Dr. Schneider is the only medical source in the record to find that

10  plaintiff cannot do any work.  While the other medical sources in the record certainly have found plaintiff to

11  have significant work-related mental functional limitations, there is no indication that any of them felt him to

12  be incapable of performing all work.

13  VII.   This Matter Should Be Remanded for an Award of Benefits

14         The Court may remand this case "either for additional evidence and findings or to award benefits."

15  Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,

16  except in rare circumstances, is to remand to the agency for additional investigation or explanation."

17  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in

18  which it is clear from the record that the claimant is unable to perform gainful employment in the national

19  economy," that "remand for an immediate award of benefits is appropriate." Id.

20         Benefits may be awarded where "the record has been fully developed" and "further administrative

21  proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

22  1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

23          (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
            evidence, (2) there are no outstanding issues that must be resolved before a
24          determination of disability can be made, and (3) it is clear from the record that the ALJ
            would be required to find the claimant disabled were such evidence credited.

25
26  Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because

    issues still remain with respect to the objective medical and lay witness evidence in the record, and with
27
    respect to plaintiff's credibility, residual functional capacity, and ability to perform both his past work and
28
    other work existing in significant numbers in the national economy, this matter should be remanded to the

ORDER
Page - 25

1    Commissioner for further administrative proceedings.

2         It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a

3    treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at

4    834 (citation omitted).  However, where the ALJ is not required to find the claimant disabled on crediting

5    of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be

6    found to have been met.  Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003).  Further, "[i]n cases

7    where the vocational expert has failed to address a claimant's limitations as established by improperly

8    discredited evidence," the Ninth Circuit  "consistently [has] remanded for further proceedings rather than

9    payment of benefits." Bunnell, 336 F.3d at 1116.

10        It also is true the Ninth Circuit has held that remand for an award of benefits is required where the

11   ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the

12   record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's

13   testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003).  The Court of Appeals in Connett went

14   on to state, however, it was "not convinced" the "crediting as true" rule was mandatory. Id.  Thus, at least

15   where findings are insufficient as to whether a claimant's testimony should be "credited as true," it appears

16   the courts "have some flexibility in applying" that rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593

17   (9th Cir. 2004) (applying "crediting as true" rule, but noting its contrary holding in Connett).[8]

18        Finally, where lay witness evidence is improperly rejected, that testimony may be credited as a

19   matter of law. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence

20   rejected by ALJ is given effect required by federal regulations, it became clear claimant's limitations were

21   sufficient to meet or equal listed impairment).  As noted by the Ninth Circuit, however, the courts do have

22   "some flexibility" in how they apply the "credit as true" rule. Connett, 340 F.3d at 876.  Further, Schneider

23   dealt with the situation where the Commissioner failed to cite any evidence to contradict the statements of

24   five lay witnesses regarding her disabling impairments. 223 F.3d at 976.

25        Accordingly, while plaintiff argues the evidence the ALJ improperly rejected must be credited as

26

27        [8]In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with

28   respect to the evaluations of her treating physicians. Benecke, 379 F.3d at 594.  The Court of Appeals credited both the claimant's
     testimony and her physicians' evaluations as true. Id.  It also was clear in that case that remand for further administrative
     proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96.

1   true and this case be remanded for an award of benefits, the Court finds that given the outstanding issues

2   that remain, as discussed above, remand for further consideration by the Commissioner, rather than for an

3   outright award of benefits, is the more appropriate course to take here.

4   <u>CONCLUSION</u>

5       Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff was not

6   disabled.  Accordingly, the ALJ's decision hereby is REVERSED and REMANDED to the Commissioner

7   for further administrative proceedings in accordance with the findings contained herein.

8       DATED this 23rd day of January, 2007.

9

10

11        Karen L. Strombom

12        United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 27